UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MUSHTAQ AHMAD,

                              Plaintiff,

              v.

WHITE PLAINS CITY SCHOOL DISTRICT,
et. al.,

                              Defendants.

18-CV-3416 (KMK)

OPINION & ORDER

Appearances:

Mushtaq Ahmad
New City, NY
*Pro se Plaintiff*

Gerald Stephen Smith, Jr., Esq.
Silverman and Associates
White Plains, NY
*Counsel for White Plains Defendants*

Michael James Del Piano, Esq.
New York State United Teachers Office of General Counsel
New York, NY
*Counsel for Union Defendants*

KENNETH M. KARAS, United States District Judge:

        Pro se Plaintiff Mushtaq Ahmad ("Plaintiff") brings this Action against the White Plains

Teachers Association ("WPTA"), the New York State United Teachers ("NYSUT"), Cairenn

Broderick ("Broderick"), John Hughes ("Hughes"), and Carol Ann Tito ("Tito") (together, the

"Union Defendants"), and the White Plains City School District ("WPCSD"), Howard W. Smith

("Smith"), Dr. Corey Reynolds ("Reynolds"), Ellen Doherty ("Doherty"), John Orcutt

("Orcutt"), Dr. Margaret Doty ("Doty"), Jeffrey Hirsch ("Hirsch"), Mark Wolstencroft

("Wolstencroft"), Vincent Dougherty ("Dougherty"), and Akiva Friedman ("Friedman")

(together, the "White Plains Defendants") (collectively, "Defendants"), under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e to 2000e-17; the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. §§ 621-634; 42 U.S.C. §§ 1981, 1983, and 1985; the Due Process Clause of the Fourteenth Amendment; the First Amendment; the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law §§ 290 to 297; and the Westchester County Human Rights Law ("WCHRL"), along with common law claims, alleging that his employer, the White Plains City School District, discriminated against him based on his religion, race, color, nationality, and age. (Second Am. Compl. ("SAC") (Dkt. No. 31).) Before the Court is Defendants' Motions To Dismiss the Second Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). (*See* Union Defs.' Not. of Mot. (Dkt. No. 42); White Plains Defs.' Not. of Mot. (Dkt. No. 43).) For the reasons to follow, the Union Defendants' Motion is granted, and the White Plains Defendants' Motion is granted in part and denied in part.

## I. Background

### A. Factual Background

The following facts are drawn from Plaintiff's Second Amended Complaint and are assumed true for the purpose of deciding the instant Motion.

Plaintiff is a 60-year-old male; he is a naturalized U.S. citizen originally from Pakistan, and a practicing Muslim. (SAC ¶¶ 4, 22.) Defendant WPCSD hired Plaintiff as a "leave replacement chemistry teacher against a permanent vacancy" at White Plains High School ("WPHS"), which had opened due to the death of the prior chemistry teacher. (*Id.* ¶ 23.) Although Plaintiff was originally scheduled to begin his employment on September 13, 2016, Defendant Reynolds, who was the Assistant Superintendent of WPCSD, (*id.* ¶ 9), contacted Plaintiff on September 6, 2016 and asked him to start work the next morning, on September 7,

2016, (*id.* ¶ 25). Plaintiff's students "performed great on the quarterly exams," and Plaintiff received praise "by his immediate supervisor" after she reviewed the students' exams. (*Id.* ¶ 27.) At some point, lab equipment was removed from Plaintiff's classroom; Plaintiff asserts "[u]pon information and belief" that this was done to "create hardship on Plaintiff and to make [him] fail due to unequal access to the lab equipment." (*Id.* ¶ 29.) Plaintiff asked Defendant Dougherty, a chemistry teacher at WPHS, (*id.* ¶ 18), about the lab equipment, and Dougherty told Plaintiff that "Mr. Braswell," an African-American chemistry teacher, stole it from Plaintiff's lab, (*id.* ¶ 30). However, a few days later when asked again, Dougherty said that Defendant Friedman, a Caucasian chemistry teacher, took the equipment. (*Id.* ¶¶ 30, 33.) Plaintiff alleges that Dougherty "numerous times made fun of Plaintiff's clothes, shoes, tie, sweaters, shirts, coats[,] and lab coat," and "called him a hotel waiter based on his facial features, race, skin color[,] and national origin," saying that "when he goes to [a] hotel he sees so many people from [the] Indian Subcontinent working as hotel waiters." (*Id.* ¶ 35.)

Separately, Plaintiff alleges that Defendant Hirsch, a guidance counselor at WPHS, (*id.* ¶ 13), held numerous meetings with one of Plaintiff's students to discuss concerns the student had about Plaintiff, (*id.* ¶ 37). At some point, Hirsch, Plaintiff, the student, and Defendant Doty, the Coordinator of Science and Engineering at WPHS, (*id.* ¶ 12), met to discuss the student's concerns and her desire to "bring more students to Dr. Doty's office in support of her allegation against Plaintiff," and Dr. Doty "said to [the student] . . . that it will provide proof that you . . . are involved in organizing students' protests against Plaintiff." (*Id.* ¶ 39.) Plaintiff alleges that he informed Doty "that he was forced to ask for help in finding out who was behind" the student protests. (*Id.* ¶ 40.)

On an unspecified date, Defendant Wolstencroft, a fellow teacher and mentor assigned to Plaintiff by "WPCSD and/or WPTA," told Plaintiff, "we don't like colored people in the department," and disclosed that he was once the subject of an investigation because of charges of racism brought "against him and the whole school staff." (*Id.* ¶ 46.) The "whole school staff had to go through some type of training because of his actions," but no other disciplinary actions were taken against Wolstencroft. (*Id.*) Wolstencroft also told Plaintiff that he knew about Plaintiff's lawsuit against the East Ramapo Central School District and that he "knows everything about East Ramapo." (*Id.* ¶ 47.) Wolstencroft then said to Plaintiff, "you are a dumb ass; you did not do your homework." (*Id.* ¶ 48.)

One day, Wolstencroft told Plaintiff to paste WPCSD's "Discipline Guidelines" on each lab station in his classroom "and enforce them in their totality or get fired." (*Id.* ¶ 50.) In December 2016, Plaintiff complied with this directive, posting the Discipline Guidelines on each lab station and informing his students that the rules will be enforced. (*Id.* ¶ 51.) The Guidelines included a rule indicating that use of electronic devices is an infraction, and that "possible consequences" include confiscation of the electronic device. (*Id.* ¶ 58.) On December 20, 2016, two students sat next to each other in Plaintiff's class and sent text messages to others on their cell phones. (*Id.* ¶¶ 43, 53.) Plaintiff attempted to confiscate the students' phones pursuant to the Discipline Guidelines. (*Id.* ¶ 54.) One student complied, but the other put her phone in her bag, and told Plaintiff, "shut up and teach the class." (*Id.* ¶¶ 54–55.) Plaintiff attempted to retrieve the student's phone from her bag; when he did so, the student picked up her bag, and the bag's strap got tangled around Plaintiff's wrist. (*Id.* ¶ 56.) The student pulled on the bag, and Plaintiff "did not release" the strap right away in order to prevent the student from falling backwards in her chair. (*Id.* ¶¶ 56–57.)

The next day, Defendant Doherty, Principal of WPHS, (*id.* ¶ 10), told Plaintiff that he would be reassigned to the "science teachers work area," and that he was not allowed to interact with students. (*Id.* ¶ 61.) On December 22, 2016, Doty brought Plaintiff to "a small room inside the main office," and ordered him to sit in isolation "without providing any reason or explanation." (*Id.* ¶ 63.) The room was guarded by a police officer, who was directed "not to let Plaintiff go out of the room wherein he was detained against his will." (*Id.* ¶ 66.) Eventually, Defendant Broderick, President of WPTA, and Defendant Hughes, Chairperson of the WPTA Grievance Committee, arrived and "tried to force Plaintiff to sign a waiver" indicating he would not sue WPCSD. (*Id.* ¶ 67.) When Plaintiff refused to sign, Broderick and Hughes "demanded the school keys back from Plaintiff" and "told him that the Superintendent of school had told . . . Broderick the previous night that he was going to terminate Plaintiff," and that he would not be allowed to enter the school building. (*Id.* ¶ 68.) Broderick and Hughes then "paraded" Plaintiff, accompanied by a police officer, through the hallways in the presence of students and other school staff, forced him to remove his belongings from his classroom, and took his school keys. (*Id.* ¶ 69.) Plaintiff received a letter dated December 23, 2016 from Reynolds directing Plaintiff not to enter any WPCSD property without prior permission, and to refrain from contacting or communicating with any WPCSD employees. (*Id.* ¶ 74.)

At a meeting on January 18, 2017, which Broderick and Reynolds attended, Plaintiff fainted "due to the injuries caused or aggravated by the actions of the Defendants." (*Id.* ¶ 75.) Plaintiff alleges that "WPCSD and WPTA failed in transporting [him] to [a] nearby hospital." (*Id.* ¶ 76.)

On February 3, 2017, Defendant Smith, Superintendent of WPCSD, (*id.* ¶ 8), "reiterated . . . that he would recommend Plaintiff's termination," (*id.* ¶ 77). On February 13, 2017, Smith

recommended to the School Board that they should "retroactively convert Plaintiff's leave-replacement appointment to a probationary appointment," which the Board approved.  (*Id.* ¶ 78.)  Plaintiff was not allowed to return to work, and Smith again recommended Plaintiff for termination on February 17, 2017.  (*Id.* ¶¶ 79–80.)  Plaintiff was ultimately terminated on April 19, 2017.  (*Id.* ¶ 81.)  Plaintiff was replaced by "a very young female teacher of a different race."  (*Id.* ¶ 84.)

Plaintiff alleges that WPTA and NYSUT "refused to file a requested grievance" on his behalf, and that he was effectively barred from going to the WPTA office because it is located on WPCSD property.  (*Id.* ¶¶ 85–86.)  Plaintiff also asserts that Reynolds promised to investigate Plaintiff's claims of discrimination, harassment, and hostile work environment, but that he has never "been provided a copy of the investigation report."  (*Id.* ¶ 90.)

### B.  Procedural History

Plaintiff filed the original Complaint on April 18, 2018.  (Compl. (Dkt. No. 2).)  On April 19, 2018, Plaintiff was granted permission to proceed in forma pauperis.  (Dkt. No. 3.)  The Court issued an Order of Service on April 27, 2018, in which it ordered Plaintiff to show cause why his claims against Defendants Hirsch, Dougherty, and Friedman, as well as three students named in the Complaint, should not be dismissed for failure to state a claim, and directed service on the remaining Defendants.  (*See* Order of Service (Dkt. No. 5).)  Plaintiff responded to the Order on May 25, 2018.  (Dkt. No. 10.)  Also on May 25, 2018, Plaintiff sought leave to file an amended complaint, (Dkt. No. 7), which the Court granted on May 31, 2018, (Dkt. No. 11).

Plaintiff filed the First Amended Complaint on June 22, 2018.  (First Am. Compl. ("FAC") (Dkt. No. 15).)  The Court directed service on Hirsch, Dougherty, and Friedman on July 13, 2018, (Dkt. No. 16), but dismissed Plaintiff's claims against the three students without

prejudice for failure to state a claim, (Dkt. No. 18). On August 13, 2018, Plaintiff filed the operative Second Amended Complaint. (SAC.) On October 24, 2018, the Court dismissed Plaintiff's claims against the three students with prejudice for failure to state a claim. (Dkt. No. 41.)

On November 5, 2018, with leave of the Court, Defendants filed the instant Motions To Dismiss. (Union Defs.' Not. of Mot.; Union Defs.' Not. of Mot. Ex. 6 (Union Defs.' Mem. of Law in Supp. of Mot.) ("Union Defs.' Mem."); White Plains Defs.' Not. of Mot.; White Plains Defs.' Mem. of Law in Supp. of Mot. ("White Plains Defs.' Mem.") (Dkt. No. 45); White Plains Defs.' Decl. in Supp. of Mot. ("White Plains Defs.' Decl.") (Dkt. No. 44).)[1] Plaintiff filed a letter on December 3, 2018, seeking a stay of this Action due to illness and requesting he be appointed pro bono counsel. (Dkt. No. 49.) The Court directed Plaintiff to submit his medical records under seal in order to have his application considered, (Dkt. No. 50), which Plaintiff did on January 7, 2019, (Dkt. No. 55). On January 9, 2019, the Court denied Plaintiff's Motion for a stay and for appointment of counsel. (Dkt. No. 57.) Plaintiff never filed a response to the Motions, and the Motions are hereby deemed fully submitted.

## II. Discussion

### A. Standard of Review

The Supreme Court has held that although a complaint "does not need detailed factual allegations" to survive a Motion To Dismiss, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of

---

[1] Because the Union Defendants improperly filed their Motion papers as a single document with several attachments, and only assigned exhibit letters to certain documents, the Court will cite each document as an exhibit to the Notice of Motion, and assign exhibit numbers based on the order in which each document was attached.

the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration and quotation marks omitted). Indeed, Rule 8 of the Federal Rules of Civil Procedure "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation marks omitted). "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Id.* (alteration and quotation marks omitted). Instead, a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Although "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint," *id.* at 563, and a plaintiff must allege "only enough facts to state a claim to relief that is plausible on its face," *id.* at 570, if a plaintiff has not "nudged [his or her] claims across the line from conceivable to plausible, the[] complaint must be dismissed," *id.*; *see also Iqbal*, 556 U.S. at 679 ("Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" (citation omitted) (second alteration in original) (quoting Fed. R. Civ. P. 8(a)(2))); *id.* at 678–79 ("Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.").

In considering Defendants' Motions, the Court is required to "accept as true all of the factual allegations contained in the [C]omplaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam); *see also Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014) (same). And, the Court must "draw[] all reasonable inferences in favor of the plaintiff." *Daniel v. T & M Prot. Res., Inc.*,

992 F. Supp. 2d 302, 304 n.1 (S.D.N.Y. 2014) (citing *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012)).  Where, as here, a plaintiff proceeds pro se, the Court must "construe[] [his complaint] liberally and interpret[] [it] to raise the strongest arguments that [it] suggest[s]." *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (per curiam) (quotation marks omitted).  However, "the liberal treatment afforded to pro se litigants does not exempt a pro se party from compliance with relevant rules of procedure and substantive law."  *Bell v. Jendell*, 980 F. Supp. 2d 555, 559 (S.D.N.Y. 2013) (quotation marks omitted).

### B.  Analysis

Plaintiff asserts that Defendants' conduct violated his rights under Title VII, the ADEA, 42 U.S.C. §§ 1981, 1983, and 1985, the First and Fourteenth Amendments; the First Amendment; the NYSHRL, and the WCHRL.  Plaintiff also brings claims against WPCSD for breach of the Teachers' Collective Bargaining Agreement ("CBA") and defamation, and claims against WPTA and NYSUT for breach of the Duty of Fair Representation.  (*See* SAC ¶¶ 92–129; *see also* White Plains Defs.' Decl. Ex. 2 ("CBA").)[2]

### 1.  Discrimination Claims

Plaintiff asserts that his treatment by Defendants, culminating in his termination, constitutes discrimination based on race, religion, national origin, age, and gender under Title

---

[2] Although not attached to the Second Amended Complaint, Plaintiff asserts a claim based on breach of the CBA and quotes specific provisions of the CBA in crafting his claim. (*See* SAC ¶¶ 62, 64, 89, 116–117.)  The CBA is therefore incorporated by reference, and the Court will consider it in deciding Defendants' Motions.  *See Hutson v. Notorious B.I.G., LLC*, No. 14-CV-2307, 2015 WL 9450623, at *3 (S.D.N.Y. Dec. 22, 2015) (considering contract not attached to the complaint in copyright ownership dispute "because it is incorporated by reference"); *Onanuga v. Pfizer, Inc.*, No. 03-CV-5405, 2003 WL 22670842, at *4 (S.D.N.Y. Nov. 7, 2003) (holding the court could consider a contract provided by the defendants but not attached to the complaint "because this contract was referenced in and relied upon in the drafting the [c]omplaint, and forms the basis for the [breach of contract] allegations").

VII, the ADEA, 42 U.S.C. §§ 1981 and 1985, §§ 102 and 103 of the Civil Rights Act of 1991,

the NYSHRL, and the WCHRL. Each of these claims, excluding Plaintiff's claims under

§ 1985, the Civil Rights Act, and the WCHRL, is analyzed under the same standard. *See Vill. of

Freeport v. Barrella*, 814 F.3d 594, 607 (2d Cir. 2016) (noting that "claims of racial

discrimination [are analyzed] identically under Title VII and § 1981"); *Pucino v. Verizon

Wireless Commc'ns, Inc.*, 618 F.3d 112, 117 n.2 (2d Cir. 2010) ("We review discrimination

claims brought under the NYSHRL according to the same standards that we apply to Title VII

discrimination claims."); *Maines v. Last Chance Funding, Inc.*, No. 17-CV-5453, 2018 WL

4558408, at *14 (E.D.N.Y. Sept. 21, 2018) ("The analytical frameworks for adjudicating

wrongful termination claims under Title VII, [§] 1981, and the NYSHRL are identical."), *as

amended*, 2018 WL 4610898 (E.D.N.Y. Sept. 25, 2018); *Barbosa v. Continuum Health Partners,

Inc.*, 716 F. Supp. 2d 210, 217 (S.D.N.Y. 2010) ("[C]laims brought under [§] 1981 [and New

York law] are generally analyzed under the same evidentiary framework that applies to Title VII

and ADEA claims.").[3]

---

[3] Because there is no private right of action under the WCHRL, *see Garcia v. Yonkers Bd. of Educ.*, 188 F. Supp. 3d 353, 364 (S.D.N.Y. 2016), that claim is dismissed. *See Tuman v. VL GEM LLC*, No. 15-CV-7801, 2017 WL 781486, at *1 n.1 (S.D.N.Y. Feb. 27, 2017) (noting that, unlike Westchester County's Fair Housing Law, the Westchester County Human Rights Law does not "provide[] for a private right of action"). Additionally, §§ 102 and 103 of the Civil Rights Act of 1991 merely provide for a jury trial and compensatory damages for violations of Title VII respectively. *See Landgraf v. USI Film Prod.*, 511 U.S. 244, 247 (1994) ("The Civil Rights Act of 1991 . . . creates a right to recover compensatory and punitive damages for certain violations of Title VII of the Civil Rights Act of 1964."); *Postema v. Nat'l League of Prof'l Baseball Clubs*, 998 F.2d 60, 61 (2d Cir. 1993) (noting that the Civil Rights Act of 1991 granted "certain plaintiffs asserting claims under the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* the right to request trials by jury and to seek compensatory and punitive damages"). Therefore, Plaintiff may not assert an independent claim based on these provisions, and these claims are dismissed. Finally, the Court notes that although Plaintiff construes his § 1983 claim as based on violation of Title VII, a § 1983 claim is precluded by a Title VII claim unless "the former is based on substantive rights *distinct* from Title VII." *Saulpaugh v. Monroe Cmty. Hosp.*, 4 F.3d 134, 143 (2d Cir. 1993) (emphasis added) (citation and quotation marks omitted); *see also id.*

## a. Wrongful Termination

"To state a prima facie claim for employment discrimination under § 1981, Title VII, ADEA, or New York law, a plaintiff must show (1) that he is a member of a protected class; (2) that he was qualified for the position in question; (3) that defendants took an adverse employment action against him; and (4) that the circumstances support an inference of discrimination on the basis of his membership in a protected class." *Williams v. N.Y.C. Transit Auth.*, No. 10-CV-882, 2014 WL 11474810, at *2 (E.D.N.Y. Sept. 16, 2014) (citation and italics omitted), *aff'd*, 620 F. App'x 63 (2d Cir. 2015). "Employment discrimination claims need not contain specific facts establishing a prima facie case of discrimination." *See Drew v. Plaza Constr. Corp.*, 688 F. Supp. 2d 270, 275 (S.D.N.Y. 2010) (citation omitted). "Rather, an employment discrimination complaint 'must include only a short and plain statement of the claim that gives the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests.'" *Id.* (alterations omitted) (quoting *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002)). The Second Circuit has explained that "what must be plausibly supported by facts alleged in the complaint is that the plaintiff is a member of a protected class, was qualified, suffered an adverse employment action, and has at least minimal support for the proposition that the employer was motivated by discriminatory intent." *Littlejohn v. City of New York*, 795 F.3d 297, 311 (2d Cir. 2015). "The facts required . . . to be alleged in the complaint need not give plausible support to the ultimate question of whether the adverse employment action was attributable to discrimination," but rather the alleged facts "need only give plausible support to a

---

("A plaintiff cannot use [§] 1983 to gain perceived advantages not available to a Title VII claimant, but a plaintiff can assert a claim under [§] 1983 if some law other than Title VII is the source of the right alleged to have been denied." (citation omitted)). The Court will therefore construe Plaintiff's § 1983 claim as relating only to his constitutional claims.

minimal inference of discriminatory motivation." *Id.*; *see also Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 87 (2d Cir. 2015) ("[A] plaintiff must allege that the employer took adverse action against [him or] her at least in part for a discriminatory reason, and [he or] she may do so by alleging facts that directly show discrimination or facts that indirectly show discrimination by giving rise to a plausible inference of discrimination."). Thus, to survive a motion to dismiss, a plaintiff need "not plead a prima facie case of discrimination," *Swierkiewicz*, 534 U.S. at 515, but "must plead enough facts to state a discrimination claim that is plausible on its face," *Roman-Malone v. City of New York*, No. 11-CV-8560, 2013 WL 3835117, at *4 (S.D.N.Y. July 25, 2013) (citation omitted). Courts making the plausibility determination "must be mindful of the elusive nature of intentional discrimination," and the concomitant frequency by which plaintiffs must "rely on bits and pieces of information to support an inference of discrimination, i.e., a 'mosaic' of intentional discrimination." *Vega*, 803 F.3d at 86 (citation, italics, and some quotation marks omitted).

With respect to Plaintiff's claims of discrimination based on race, religion, gender, and national origin, there are only three allegations that can be construed as arguably supporting an inference of discrimination with respect to Plaintiff's termination. The first is that Dougherty "called [Plaintiff] a hotel waiter based on his facial features, race, skin color[,] and national origin," saying that "when he goes to [a] hotel he sees so many people from [the] Indian Subcontinent working as hotel waiters." (SAC ¶ 35.) The second is that Wolstencroft told Plaintiff, "we don't like colored people in the department," and disclosed that he was once subject of an investigation because of charges of racism brought "against him and the whole school staff," and that he was ultimately not disciplined for the unspecified underlying conduct.

(*Id.* ¶ 46.)  The third is that Plaintiff was ultimately replaced by "a very young female teacher of a different race."  (*Id.* ¶ 84.)

"[S]tray remarks alone do not support a discrimination suit."  *Danzer v. Norden Sys., Inc.*, 151 F.3d 50, 56 (2d Cir. 1998) (quotation marks omitted); *see also Brown v. County of Erie*, No. 12-CV-251, 2013 WL 885993, at *7 (W.D.N.Y. Mar. 8, 2013) ("Courts have routinely held that stray remarks by non-decision makers are insufficient, without other evidence, to raise an inference of discrimination." (citation and quotation marks omitted)).  "In determining whether a remark is probative [of discriminatory intent], [courts] have considered four factors: (1) who made the remark (i.e., a decision-maker, a supervisor, or a low-level co-worker); (2) when the remark was made in relation to the employment decision at issue; (3) the content of the remark (i.e., whether a reasonable juror could view the remark as discriminatory); and (4) the context in which the remark was made (i.e., whether it was related to the decision-making process)." *Henry v. Wyeth Pharm., Inc.*, 616 F.3d 134, 149 (2d Cir. 2010).  "Isolated comments, while potentially offensive, do not lead to an inference of discriminatory intent."  *Luka v. Bard Coll.*, 263 F. Supp. 3d 478, 487 (S.D.N.Y. 2017).

Dougherty and Wolstenscroft, like Plaintiff, are teachers at WPHS, and Plaintiff alleges no facts indicating that either one had decision-making authority with respect to personnel decisions, or were otherwise involved with Plaintiff's termination.  There are no allegations from which the Court could infer that anyone involved in the decision to terminate Plaintiff's employment was even aware of these comments.  Courts in the Second Circuit routinely dismiss discrimination claims where the only allegations made in support are stray remarks by non-decisionmakers wholly unconnected to the adverse employment action underlying the claim. *See, e.g.*, *Lebowitz v. New York City Dep't of Educ.*, No. 15-CV-2890, 2017 WL 1232472, at *10

(E.D.N.Y. Mar. 31, 2017) (granting motion to dismiss Title VII claim where the plaintiff alleged school administrators made several derogatory comments about the plaintiff's national origin because "[s]uch stray remarks, . . . even if made by a decisionmaker, without more, cannot get a discrimination suit to a jury." (citation and quotation marks omitted)); *Luka*, 263 F. Supp. 3d at 487 (granting motion to dismiss where "the alleged [discriminatory] remark was neither made close in time to the decision nor in relation to the specific employment decision challenged"); *Soloviev v. Goldstein*, 104 F. Supp. 3d 232, 249 (E.D.N.Y. 2015) (granting motion to dismiss where the plaintiffs "fail[ed] to allege that any of the named [i]ndividual . . . [d]efendants or anyone with control over the decision to fire [the plaintiff] made [the alleged discriminatory] comments"); *Paul v. Postgraduate Ctr. for Mental Health*, 97 F. Supp. 3d 141, 167–68 (E.D.N.Y. 2015) (holding that "two remarks referencing [the] Plaintiff's national origin and age" are "the very definition of what constitutes 'stray remarks' under employment discrimination law" (citations and some quotation marks omitted)).

Further, Plaintiff himself indicates that he was "terminated . . . for following the Rules and Code of Conduct," (SAC ¶ 82), a reference to his interaction with two students while attempting to confiscate their cell phones on December 20, 2016, the day before he was removed from his classroom, (*id.* ¶¶ 58–59). Plaintiff thus alludes to the fact that his conduct on December 20, 2016, rightly or wrongly, was the basis for his termination. The fact that Plaintiff identifies a non-discriminatory basis for his termination undermines any potential inference that he was terminated based on his race, national origin, or religion. *See Powell v. Merrick Acad. Charter Sch.*, No. 16-CV-5315, 2018 WL 1135551, at *7 (E.D.N.Y. Feb. 28, 2018) (dismissing Title VII claims where the complaint included "allegations that actually undermine the inference that she was fired for discriminatory reasons"); *Frederick v. United Bhd. of Carpenters & Joiners*

*of Am. (UBCJA) Local 926*, No. 12-CV-2387, 2014 WL 5783045, at *3 (E.D.N.Y. Nov. 6, 2014) (dismissing Title VII claims where "[the] [p]laintiff's own allegations suggest that she was terminated" for race-neutral reasons (citations omitted)); *Hussey v. N.Y.S. Dep't of Law/Office of Att'y Gen.*, 933 F. Supp. 2d 399, 407 (E.D.N.Y. 2013) ("Though [the] plaintiff insists that [the defendant's stated justification] was 'a pretext to cover up racial discrimination,' she offers no facts in support of that claim and therefore fails to allege sufficiently that the failure to promote her . . . was based on her race." (citation omitted)). In light of the fact that the only allegations reflecting discriminatory intent are stray comments by non-decisionmakers, the mere fact that Plaintiff was ultimately replaced by someone of a different race does not nudge Plaintiff's discrimination claims across the line "from conceivable to plausible." *Twombly*, 550 U.S. at 570; *see also Williams v. Calderoni*, No. 11-CV-3020, 2012 WL 691832, at *7 (S.D.N.Y. Mar. 1, 2012) ("[I]t is hornbook law that the mere fact that something bad happens to a member of a particular racial group does not, without more, establish that it happened *because* the person is a member of that racial group."), *aff'd*, 529 F. App'x 89 (2d Cir. 2013).

Similarly, Plaintiff's only allegation with respect to gender discrimination is that the WPHS Principal and Science Department Supervisor "are females," and that he was terminated and replaced with a female teacher. This is insufficient to state a claim for gender discrimination. *See Moore v. City of New York*, No. 15-CV-6600, 2017 WL 35450, at *12 (S.D.N.Y. Jan. 3, 2017) ("Beyond merely identifying himself as an African American male and noting that a number of [the] [d]efendants involved in the alleged adverse actions suffered by [the plaintiff] are 'white' and/or 'female,' [the plaintiff] proffers no other facts to support his claim that [the] [d]efendants took action against him because of his membership in a protected class."), *adopted by* 2017 WL 1064714 (S.D.N.Y. Mar. 20, 2017); *Alvarez v. Rosa*, No. 11-CV-

3818, 2012 WL 651630, at *4 (S.D.N.Y. Feb. 28, 2012) (holding that "[w]hile [the] plaintiff identifies the age range, race[,] and national origin of the woman who was ultimately hired for the . . . position" for which she was not hired, the plaintiff "does not allege facts from which the [c]ourt might reasonably infer that such woman was promoted because of her race, national origin[,] or age (as compared to [the] plaintiff's)"); *Kouakou v. Fideliscare New York*, 920 F. Supp. 2d 391, 398 (S.D.N.Y. 2012) (holding the fact that the plaintiff was of a different race than all the members of the department into which he was denied transfer, together with a single stray remark about the plaintiff's race, "do not create an inference that the denial of [the] [p]laintiff's requested transfer [was] motivated by his race or national origin, particularly where [the] [p]laintiff has not alleged that his employer granted the transfer requests of other similarly situated employees outside of [the] [p]laintiff's racial group" (citation, alterations, and quotation marks omitted)).

Regarding Plaintiff's age discrimination claim, the only allegation made in support is that Plaintiff was replaced by "a very young female teacher." (SAC ¶ 84.) "[A]n employer's decision to replace an older worker with a significantly younger one can support an inference of intentional age discrimination . . . ." *Woodman v. WWOR-TV, Inc.*, 411 F.3d 69, 78–79 (2d Cir. 2005). However, "an allegation that plaintiff was replaced by a younger employee is not sufficient, without more, to survive a motion to dismiss." *Nance v. City of New York*, No. 09-CV-2786, 2011 WL 2837491, at *4 (E.D.N.Y. July 14, 2011); *see also Marcus v. Leviton Mfg. Co., Inc.*, 661 F. App'x 29, 33 (2d Cir. 2016) ("Without more, the mere fact that an older employee was replaced by a younger one does not plausibly indicate discriminatory motive."); *Maines*, 2018 WL 4558408, at *16 (granting motion to dismiss ADEA claim where "[t]he only support provided is that [the plaintiffs] were replaced by younger employees," because "this allegation,

without more, cannot establish 'but for' causation"). Plaintiff does not allege that anyone ever commented on his age or insinuated that he was too old to perform his job. Additionally, based on his allegations, Plaintiff was hired when he was approximately 58, and thus already a member of the class protected by the ADEA, further undermining any possible inference of age discrimination relating to his termination. *See Snowden v. Trs. of Columbia Univ.*, No. 12-CV-3095, 2014 WL 1274514, at *8 (S.D.N.Y. Mar. 26, 2014) ("Where, as here, an employee is already a member of the protected class when hired, any inference of age discrimination when [the plaintiff's] employment is terminated is undermined."); *Baguer v. Spanish Broad. Sys.*, No. 04-CV-8393, 2010 WL 2813632, at *14 (S.D.N.Y. July 12, 2010) ("Being in the protected class when hired undermines any inference of age discrimination."); *Elfenbein v. Bronx Lebanon Hosp. Ctr.*, No. 08-CV-5382, 2009 WL 3459215, at *7 (S.D.N.Y. Oct. 27, 2009) (noting that because "[the] [p]laintiff was 68 and already a member of the protected class [when he was hired]," "any finding of pretext" was "undermine[d]" (citations and quotation marks omitted)).

Finally, Plaintiff does not specify the age of the individual who was hired to replace him. "Absent any indication of the younger individual's age, any inference of discrimination on the basis of this allegation would be purely speculative." *Shlafer v. Wackenhut Corp.*, 837 F. Supp. 2d 20, 26 (D. Conn. 2011) (citing *Iqbal*, 556 U.S. at 678); *Payne v. Malemathew*, No. 09-CV-1634, 2011 WL 3043920, at *2 n.3 (S.D.N.Y. July 22, 2011) (noting that "allegations that [the] plaintiff performed satisfactorily and was replaced with a younger person merely allow for the possibility that age discrimination was at work but do not raise that possibility above a speculative level"). Plaintiff therefore fails to create an inference of discriminatory intent with respect to his age. *See Williams v. Victoria's Secret*, No. 15-CV-4715, 2017 WL 384787, at *10 (S.D.N.Y. Jan. 27, 2017) (dismissing claim because the plaintiff's "bare assertion that he was

replaced by a younger person is insufficient to create an inference of discriminatory intent"), *adopted by* 2017 WL 1162908 (S.D.N.Y. Mar. 28, 2017), *appeal dismissed*, No. 17-1311, 2017 WL 5041006 (2d Cir. Sept. 13, 2017); *Adams v. New York State Educ. Dep't*, 752 F. Supp. 2d 420, 465 (S.D.N.Y. 2010) (finding the plaintiffs' age discrimination claim "insufficient as a matter of law" where "[t]he claim merely alleges that [the] plaintiffs are over 40 years of age and were replaced by younger teachers," and therefore "merely repeats the statutory elements, without setting out any facts from which age discrimination can be inferred"), *aff'd*, 460 F. App'x 67 (2d Cir. 2012).

Because each of Plaintiff's causes of action based on race, religion, age, gender, or national origin discrimination requires that Plaintiff allege at least enough facts to "give plausible support to a minimal inference of discriminatory motivation," *Luka*, 263 F. Supp. 3d at 487, and Plaintiff failed to do so, his claims based on his termination under Title VII, the ADEA, 42 U.S.C. § 1981, and the NYSHRL are all dismissed.

### b. Hostile Work Environment

"Title VII prohibits an employer from discriminating in 'compensation, terms, conditions, or privileges of employment, because of [an] individual's . . . race . . . or national origin.'" *Littlejohn*, 795 F.3d at 320 (quoting 42 U.S.C. § 2000e–2(a)(1)). The phrase "terms, conditions, or privileges of employment," 42 U.S.C. § 2000e–2(a)(1), "evinces a congressional intent to strike at the entire spectrum of disparate treatment, which includes requiring people to work in a discriminatorily hostile or abusive environment." *Littlejohn*, 795 F.3d at 320 (alterations and quotation marks omitted). To establish a hostile work environment claim, "a plaintiff must show that the 'workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an

abusive working environment.'" *Id.* at 320–21 (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)). At the motion-to-dismiss stage, "a plaintiff need only plead facts sufficient to support the conclusion that []he was faced with 'harassment of such quality or quantity that a reasonable employee would find the conditions of [his] employment altered for the worse.'" *Patane v. Clark*, 508 F.3d 106, 113 (2d Cir. 2007) (alterations omitted) (quoting *Terry v. Ashcroft*, 336 F.3d 128, 148 (2d Cir. 2003)); *see also Gonzalez v. City of New York*, No. 15-CV-3158, 2015 WL 9450599, at *4 (E.D.N.Y. Dec. 22, 2015) (same).

"[A] work environment's hostility should be assessed based on the totality of the circumstances." *Patane*, 508 F.3d at 113 (citation and quotation marks omitted); *see also Humphries v. City Univ. of N.Y.*, No. 13-CV-2641, 2013 WL 6196561, at *10 (S.D.N.Y. Nov. 26, 2013) (same). Relevant circumstances include: "(1) the frequency of the discriminatory conduct; (2) its severity; (3) whether it is threatening and humiliating, or a mere offensive utterance; and (4) whether it unreasonably interferes with an employee's work performance." *Humphries*, 2013 WL 6196561, at *10 (citing *Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 102 (2d Cir. 2010)); *see also Rivera v. Rochester Genesee Regional Trans. Auth.*, 743 F.3d 11, 20 (2d Cir. 2012) (same). "[W]hether a particular work environment is objectively hostile is necessarily a fact-intensive inquiry," and accordingly, the Second Circuit has "repeatedly cautioned against setting the bar too high" in the context of a motion to dismiss. *Patane*, 508 F.3d at 113–14 (citation and quotation marks omitted); *see also Humphries*, 2013 WL 6196561, at *10 (same).

Nevertheless, the incidents of harassment, generally, "must be more than episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive." *Raspardo v. Carlone*, 770 F.3d 97, 114 (2d Cir. 2014) (quoting *Alfano v. Costello*, 294 F.3d 365, 374 (2d Cir. 2002)). "Isolated acts, unless very serious, do not meet the threshold of severity or

pervasiveness." *Keaton v. Conn. Dep't of Rehab. Servs.*, No. 16-CV-1810, 2018 WL 1245728, at

*10 (D. Conn. Mar. 9, 2018) (quoting *Alfano*, 294 F.3d at 374). However, "even a single act can

meet the threshold if, by itself, it can and does work a transformation of the plaintiff's

workplace." *Alfano*, 294 F.3d at 374; *see also Camarda v. City of New York*, No. 11-CV-2629,

2015 WL 5458000, at *7 (E.D.N.Y. Sept. 16, 2015) (same), *aff'd*, 673 F. App'x 26 (2d Cir. Dec.

14, 2016).

Even liberally construed, the conduct alleged here is "quintessentially episodic."

*Harrison v. State Univ. of N.Y. Downstate Med. Ctr.*, No. 16-CV-1101, 2018 WL 4055278, at *11

(E.D.N.Y. July 6, 2018), *adopted by* 2018 WL 4054868 (E.D.N.Y. Aug. 24, 2018). Plaintiff

alleges that (1) Dougherty "numerous times made fun of Plaintiff's clothes, shoes, tie, sweaters,

shirts, coats[,] and lab coat," and "called him a hotel waiter based on his facial features, race,

skin color[,] and national origin," saying that "when he goes to [a] hotel he sees so many people

from [the] Indian Subcontinent working as hotel waiters," (*id.* ¶ 35), but includes no further

detail about the frequency or severity of such incidents; that Wolstencroft told Plaintiff, "we

don't like colored people in the department," and disclosed that he was once the subject of an

investigation because of charges of racism brought "against him and the whole school staff," and

that he was ultimately not disciplined for the unspecified underlying conduct, (*id.* ¶ 46); that

students met with school administrators, including Hirsch, Doty, and Dougherty and made "false

allegations" against Plaintiff, including that he was not teaching chemistry sufficiently, and that

the students will not be prepared for the Regents Exam in June, (*id.* ¶¶ 38–41 & n.1); and that

students violated the school's code of conduct in his class by, among other things, using their cell

phones, and were not disciplined, (*id.* ¶¶ 42–45). These isolated incidents, each of which

involves entirely different actors and only some of which plausibly suggest a discriminatory

motive, are insufficient to withstand a motion to dismiss. *See Duplan v. City of New York*, 888 F.3d 612, 627 (2d Cir. 2018) (affirming dismissal of complaint because allegations that the plaintiff was ostracized by supervisors over three years and was suspended without pay for ten days were insufficient to meet the "high bar" required to state a claim for a hostile work environment); *Harrison*, 2018 WL 4055278, at *11–12 (dismissing hostile work environment claims where the plaintiff "complain[ed] of five extremely unpleasant interactions" and uncertainty about requested sick leave "over the course of several weeks"); *Johnson v. Conn. Dep't of Admin. Servs. Bureau of Enter. Sys. & Tech.*, No. 17-CV-901, 2018 WL 306697, at *8 (D. Conn. Jan. 5, 2018) (allegations that a defendant "cited [the] plaintiff for an unauthorized absence, gave him a negative evaluation, and denied him mentoring[,] do not rise to the level of severe or pervasive and cannot be said to have altered the conditions of [the] plaintiff's employment for the worse"); *Williams v. N.Y. State Unified Court Sys. Office of Court Admin.*, No. 16-CV-2061, 2017 WL 4402562, at *7 (S.D.N.Y. Sept. 30, 2017) (dismissing hostile work environment claim based on allegations the plaintiff "was unjustly subjected to poor performance reviews and was given additional duties above and beyond his regular assignments," and explaining that "[e]ven assuming that this conduct was motivated by discriminatory animus," the incidents were not sufficiently "severe or pervasive"); *Guy v. MTA N.Y.C. Transit*, No. 15-CV-2017, 2016 WL 8711080, at *8 (E.D.N.Y. Sept. 23, 2016) (dismissing hostile work environment claims where the plaintiff "simply identifies a series of incidents in his complaint," but "fails to allege any facts that would show that the conduct of which he complains is objectively severe and pervasive"); *Davis-Molinia v. Port Auth. of N.Y. & N.J.*, No. 08-CV-7584, 2011 WL 4000997, at *11 (S.D.N.Y. Aug. 19, 2011) (dismissing the plaintiffs' hostile work environment claims because "[t]he gravamen of their claims is rooted in conduct that amounts to nothing

more than workplace dynamics—that is, personal enmity or personality conflicts"), *aff'd*, 488 F. App'x 530 (2d Cir. 2012).

Although "[f]acially neutral incidents," such as Plaintiff's allegations that students misbehaved in his class and were not disciplined by the administration, "may be included, of course, among the 'totality of the circumstances' that courts consider in any hostile work environment claim," this is only the case "so long as a reasonable fact-finder could conclude that they were, in fact, based on" Plaintiff's membership in a protected class. *Alfano*, 294 F.3d at 378; *see also Lucio v. N.Y.C. Dep't of Educ.*, 575 F. App'x 3, 5 (2d Cir. 2014) (affirming dismissal of hostile work environment claim where the complaint pleaded no facts "that would allow a court to draw a reasonable inference that [the plaintiff] was subjected to any mistreatment or adverse action *because of* her race"); *Dechberry v. N.Y.C. Fire Dep't*, 124 F. Supp. 3d 131, 158 (E.D.N.Y. 2015) (holding that, "even construing all of the allegations as true and drawing inferences liberally and in favor of the pro se plaintiff, there is no factual basis upon which to conclude that any of [the] defendant's actions were taken *because* of [the] plaintiff's" membership in a protected class). Here, Plaintiff has pled no facts that, even if true, could support an inference that the facially neutral incidents he alleges reflect a discriminatory motive, particularly in light of the fact that they involve different actors than the two individuals who allegedly made remarks about Plaintiff's race and national origin.

Finally, with respect to Plaintiff's termination, as discussed above, Plaintiff has pled insufficient facts to enable the Court to infer that his termination was discriminatory, and his termination therefore does not bolster his hostile work environment claim. *See Alfano*, 294 F.3d at 377 ("It is . . . important in hostile work environment cases to exclude from consideration personnel decisions that lack a linkage or correlation to the claimed ground of discrimination.").

Thus, Plaintiff's allegations, even if true, do not adequately plead that his workplace was "permeated with discriminatory intimidation, ridicule, and insult, that [was] sufficiently severe or pervasive to alter the conditions of [his] employment." *Mullins v. Consol. Edison Co. of N.Y., Inc.*, No. 13-CV-6800, 2015 WL 4503648, at *12 (S.D.N.Y. July 22, 2015) (quoting *Aulicino v. N.Y.C. Dep't of Homeless Servs.*, 580 F.3d 73, 82 (2d Cir. 2009)). "Simply stated, while Plaintiff asserts facts suggesting that he may have suffered various unpleasant incidents at the workplace, considering the allegations individually and in their totality, the factual allegations of the [Amended Complaint] do not plausibly suggest sufficient severity, pervasiveness, or a race-based motive." *Payne*, 2011 WL 3043920, at *4 (citation omitted). Therefore, Plaintiff's hostile work environment claims are dismissed.

### c. Retaliation

Title VII also prohibits discrimination against an employee "because he [or she] has opposed any practice made an unlawful employment practice." 42 U.S.C. § 2000e-3(a). Courts analyze claims for retaliation pursuant to Title VII under the familiar framework set forth by the Supreme Court in *McDonnell Douglas*. *See Zann Kwan v. Andalex Grp. LLC*, 737 F.3d 834, 843 (2d Cir. 2013) ("Federal and state law retaliation claims are reviewed under the burden-shifting approach of *McDonnell Douglas*."). "Under the first step of the *McDonnell Douglas* framework, the plaintiff must establish a prima facie case of retaliation." *Id.* at 844 (citation omitted). Once the plaintiff has done so, "the burden shifts to the employer to articulate some legitimate, non-retaliatory reason for the employment action." *Id.* at 845 (citation omitted). "The employee at all times bears the burden of persuasion to show retaliatory motive." *Cox v. Onondaga Cty. Sheriff's Dep't*, 760 F.3d 139, 145 (2d Cir. 2014).

To establish a prima facie case of retaliation, the plaintiff must show that: "(1) []he was engaged in an activity protected under Title VII; (2) [his] employer was aware of [his] participation in the protected activity; (3) the employer took adverse action against [him]; and (4) a causal connection existed between the protected activity and the adverse action." *Kwan*, 737 F.3d at 850 (citation omitted). Accordingly, "for a retaliation claim to survive . . . a motion to dismiss, the plaintiff must plausibly allege that: (1) defendants discriminated—or took an adverse employment action—against him, (2) 'because' [he] has opposed any unlawful employment practice." *Vega*, 801 F.3d at 90; *see also Shein v. N.Y.C. Dep't of Educ.*, No. 15-CV-4236, 2016 WL 676458, at *7 (S.D.N.Y. Feb. 18, 2016) (noting that unlike "discrimination claims under Title VII, the plaintiff must plausibly allege that the retaliation was a but-for cause of the employer's adverse action" (citation and quotation marks omitted)); *Goodine v. Suffolk Cty. Water Auth.*, No. 14-CV-4514, 2016 WL 375049, at *6 (E.D.N.Y. Jan. 29, 2016) (same). "The Supreme Court has held that in the context of a Title VII retaliation claim, an adverse employment action is any action that 'could well dissuade a reasonable worker from making or supporting a charge of discrimination.'" *Vega*, 801 F.3d at 90 (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 57 (2006)); *see also Hicks v. Baines*, 593 F.3d 159, 162 (2d Cir. 2010) ("[R]etaliation is unlawful when the retaliatory acts were harmful to the point that they could well dissuade a reasonable worker from making or supporting a charge of discrimination." (citation and quotation marks omitted)).

Plaintiff asserts that during his employment with WPCSD, Reynolds "promised Plaintiff that a full investigation into his complaints of discrimination, harassment, [and] hostile and unsafe work environment would be conducted." (SAC ¶ 90.) Plaintiff alleges that "[t]hereafter, [he] was informed by Dr. Reynolds that the school attorneys would conduct the investigation into

Plaintiff's complaints." (*Id.*) Plaintiff then conclusorily asserts that this fact "leads to [the] reasonable conclusion that WPCSD attorneys attempted to create a cover-up to WPCSD's wrong done to Plaintiff," and states that he was never "provided a copy of the investigation report." (*Id.*) Plaintiff then alleges that WPCSD and its employees retaliated against him "for his complaints of discrimination." (*Id.* ¶ 91.)

Construing Plaintiff's allegations liberally, he alleges that he complained to Reynolds about discriminatory treatment but that no investigation was ever performed. However, he pleads no facts that could support an inference that he was terminated in response to those complaints. "A plaintiff must plausibly plead a connection between the act and his engagement in protected activity" in order to state a retaliation claim. *Wilson v. New York*, No. 15-CV-23, 2017 WL 9674497, at *14 (E.D.N.Y. Jan. 24, 2017) (citing 42 U.S.C. § 2000e-3(a)); *Thior v. JetBlue Airways, Inc.*, No. 13-CV-6211, 2016 WL 5092567, at *6 (E.D.N.Y. Sept. 19, 2016) (dismissing retaliation claim where the complaint "does not allege facts which plausibly support a causal connection, let alone the but-for causation required by federal law, between the protected activity and the adverse employment action"). "In order to establish [the requisite] causal connection, a plaintiff must allege (1) direct proof of retaliatory animus directed against the plaintiff; (2) disparate treatment of similarly situated employees; or (3) that the retaliatory action occurred close in time to the protected activities." *McNair v. NYC Health & Hosp. Co.*, 160 F. Supp. 2d 601, 604 (S.D.N.Y. 2001) (citing *DeCintio v. Westchester Cty. Med. Ctr.*, 821 F.2d 111, 115 (2d Cir. 1987)). Although Plaintiff alleges that Reynolds was aware of Plaintiff's complaints, (SAC ¶ 90), and that Reynolds was at least arguably involved in the disciplinary process that led to Plaintiff's termination (although not necessarily the ultimate decisionmaker), (*id.* ¶¶ 74–75), there are no other facts from which the Court could infer that Plaintiff was

terminated *because of* his complaints. *See Grimes-Jenkins v. Consol. Edison Co. of N.Y., Inc.*,

No. 16-CV-4897, 2017 WL 2258374, at *11 (S.D.N.Y. May 22, 2017) (dismissing retaliation

claim because "the plaintiff does not tie the [adverse employment action] to the reporting of any

act of discrimination or harassment"), *adopted by* 2017 WL 2709747 (S.D.N.Y. June 22, 2017);

*Harris v. NYU Langone Med. Ctr.*, No. 12-CV-454, 2013 WL 3487032, at *19 (S.D.N.Y. July 9,

2013) (dismissing retaliation claim because the complaint "alleges no facts to suggest that [the

plaintiff's] activities, protected or not, motivated [the defendant's] decision not to promote or

terminate her"), *adopted as modified by* 2013 WL 5425336 (S.D.N.Y. Sept. 27, 2013). At most,

Plaintiff may have intended to rely on temporal proximity between his complaints and his

termination to demonstrate a causal connection; however, Plaintiff did not specify when the

complaints were made, preventing the Court from inferring retaliation based on temporal

proximity alone. *See Henry v. NYC Health & Hosp. Corp.*, 18 F. Supp. 3d 396, 412 (S.D.N.Y.

2014) (dismissing retaliation claim where the complaint "fails to state with even a modicum of

specificity when the relevant events occurred"); *Williams v. City of New York*, No. 11-CV-9679,

2012 WL 3245448, at *11 (S.D.N.Y. Aug. 8, 2012) (declining to infer causation based on

temporal proximity where the plaintiff did not specify when he engaged in the protected

conduct). Because Plaintiff "does not provide the date" he engaged in protected activity, it is

"impossible for the Court to determine the temporal proximity of the alleged retaliatory acts to

the protected conduct." *Feliciano v. City of New York*, No. 14-CV-6751, 2015 WL 4393163, at

*9 (S.D.N.Y. July 15, 2015). Therefore, Plaintiff's retaliation claims are dismissed.

## 2.  Duty of Fair Representation

Plaintiff asserts that "WPTA failed to fulfill its obligation of duty of fair representation"

when it "tried to push Plaintiff to sign stipulations for the benefit of [his] employer," and that

WPTA and NYSUT "failed in providing proper representation and processing grievances due to prejudice, hostility, collusion[,] and conspiracy." (SAC ¶ 117.) The Union Defendants argue that the Court lacks subject matter jurisdiction over this claim. (Union Defs.' Mem. 6–7.)

"It is well settled that this Court lacks subject matter jurisdiction over duty of fair representation claims brought by employees of political subdivisions." *Gear v. Dep't of Educ.*, No. 07-CV-11102, 2010 WL 5297850, at *3 (S.D.N.Y. Dec. 21, 2010) (citation omitted), *aff'd*, 472 F. App'x 67 (2d Cir. 2012); *see also Ford v. D.C. 37 Union Local 1549*, 579 F.3d 187, 188 (2d Cir. 2009) (per curiam) (holding federal courts lack subject matter jurisdiction over duty of fair representation claims brought by public employees, and noting that "[w]e deem it appropriate to issue a published opinion and thereby make clear beyond peradventure that this is the law of our Circuit")). This conclusion "turns on the fact that both the Labor Management Relations Act ('LMRA') and the National Labor Relations Act ('NLRA'), the federal statutes under which duty of fair representation claims arise, exclude 'political subdivisions' of the state from their scope." *Gear*, 2010 WL 5297850, at *3 (citations omitted). Plaintiff's duty of fair representation claims against WPTA and NYSUT are therefore dismissed for lack of subject matter jurisdiction. *See Majied v. New York City Dep't of Educ.*, No. 16-CV-5731, 2018 WL 333519, at *4 (S.D.N.Y. Jan. 8, 2018) (holding claims for breach of duty of fair representation against teachers union under LMRA were "without merit, as it is well established that 'public employees are not covered by that statute'" (quoting *Ford*, 579 F.3d at 188)); *Pinkard v. New York City Dep't of Educ.*, No. 11-CV-5540, 2012 WL 1592520, at *9 n.7 (S.D.N.Y. May 2, 2012) ("To the extent [the plaintiff] seeks to assert a 'hybrid' claim against the [teacher's union] for breaching its duty of fair representation under the Labor Management Relations Act (LMRA), that claim also must fail because federal courts lack 'subject matter jurisdiction over duty of fair

representation claims brought by employees of political subdivisions'" (citations omitted));

*Rodriguez-Rivera v. City of New York*, No. 05-CV-10897, 2007 WL 766195, at *3 (S.D.N.Y. Mar.

12, 2007) ("Several of [the] [p]laintiff's claims are predicated on an alleged breach by the

[Teachers' Union] of its duty of fair representation.  The question of whether the [Union]

breached its duty of fair representation is beyond the subject matter jurisdiction of this [c]ourt.").

To the extent Plaintiff seeks to assert state law claims for breach of the duty of fair

representation, *see* N.Y. Civ. Serv. Law § 209-a, any such claim is barred by the four-month

statute of limitations, *see* N.Y. C.P.L.R. § 217(2)(a) ("Any action or proceeding against an

employee organization . . . which complains that such employee organization has breached its

duty of fair representation . . . shall be commenced within four months of the date the employee

or former employee knew or should have known that the breach has occurred, or within four

months of the date the employee or former employee suffers actual harm, whichever is later.");

*see also Williams v. New York City Hous. Auth.*, 458 F.3d 67, 69 (2d Cir. 2006) ("Under New

York state law, a claim against a union for violating the duty of fair representation is subject to a

four-month statute of limitations." (citing N.Y. C.P.L.R. § 217(2)(a))); *Sales v. Clark*, No. 14-CV-

8091, 2015 WL 7731441, at *6 n.6 (S.D.N.Y. Sept. 16, 2015) ("The state-law equivalent of the

federal fair-representation claim is limited by a still shorter, four-month, statute of limitations."),

*adopted by* 2015 WL 7736548 (S.D.N.Y. Nov. 30, 2015), *appeal dismissed*, No. 17-1016 (2d Cir.

June 15, 2017).

The latest date attributable to any allegation in the Second Amended Complaint is April

19, 2017, when Plaintiff's termination became effective.  (SAC ¶ 81.)  Therefore, his claim

accrued, at the latest, on that date.  *See Sanders v. New York City Dep't of Hous. Pres. & Dev.*, 8

N.Y.S.3d 45, 46 (App. Div. 2015) ("The [trial] court correctly dismissed the proceeding as time-

barred.  [The plaintiff] failed to commence this proceeding within four months of receiving notice of her termination."); *Mateo v. Bd. of Educ. of City of New York*, 728 N.Y.S.2d 71, 72 (App. Div. 2001) (holding claim challenging termination of school principal "barred by the four-month Statute of Limitations because this determination became final on the effective date of the [the plaintiff]'s discharge").  Plaintiff commenced this action on April 18, 2018, almost exactly one year after his termination.  *See Sales*, 2017 WL 892609, at *5 (dismissing the plaintiff's state law claims for breach of the duty of fair representation as time-barred because "he did not file a complaint against the [u]nion [d]efendants until nearly a year" after his claim accrued); *Vill. of Northport v. Krumholz*, 93 N.Y.S.3d 419, 421 (App. Div. 2019) (dismissing counterclaim based on wrongful termination of public employee as time-barred "because it was subject to the four-month statute of limitations," and finding the claim accrued when the employee "was effectively terminated").  Therefore, Plaintiff's state law duty of fair representation claims are dismissed as time-barred.

### 3.  Violation of the Collective Bargaining Agreement

Plaintiff asserts a claim against all Defendants for violating the CBA "numerous times." (SAC ¶ 115.)  Specifically, Plaintiff alleges that the CBA entitled him to a written explanation of the reason for his reassignment, (*id.* ¶¶ 62, 64), and the right to compensation when he was allegedly absent due to injury resulting from his employment, (*id.* ¶ 89).

"Section 301 of the LMRA, among other things, 'governs actions by an employee against an employer for breach of a collective bargaining agreement.'"  *Tand v. Solomon Schechter Day Sch. of Nassau Cty. (Tand I)*, 324 F. Supp. 2d 379, 382 (E.D.N.Y. 2004) (quoting *Dougherty v. Am. Tel. & Tel. Co.*, 902 F.2d 201, 203 (2d Cir. 1990)).  "Suits arising under section 301 include 'those seeking to vindicate uniquely personal rights of employees such as wages, hours, overtime

pay, and wrongful discharge.'" *Id.* (some quotation marks omitted) (quoting *Hines v. Anchor Motor Freight*, 424 U.S. 554, 562 (1976)). In a "pure § 301 action," the six-year statute of limitations for breach of contract actions applies. *Id.* (citing *O'Hare v. General Marine Transport Corp.*, 740 F.2d 160, 167 (2d Cir. 1984)). However, "[a] hybrid action is one . . . which contains allegations against both the employer and the union." *Tand v. Solomon Schechter Day Sch. of Nassau Cty. (Tand II)*, 378 F. Supp. 2d 120, 121 (E.D.N.Y. 2005) (citing *DelCostello v. Int'l Brotherhood of Teamsters*, 462 U.S. 151, 164 (1983)). "Such claims have two elements: '(1) that the employer breached a collective bargaining agreement and (2) that the union breached its duty of fair representation in redressing [a] grievance against the employer.'" *Perkins v. 199 SEIU United Healthcare Workers E.*, 73 F. Supp. 3d 278, 288 (S.D.N.Y. 2014) (quoting *White v. White Rose Food*, 128 F.3d 110, 113 (2d Cir. 1997)). Because Plaintiff alleges that WPTA and NYSUT's "wrongdoing prevented [him] from filing a formal grievance pursuant to the CBA," in addition to alleging that Defendants violated the CBA, "this action is most properly characterized as a hybrid action." *Tand II*, 378 F. Supp. 2d at 121. (*See* SAC ¶ 117.) "[I]t is now well-settled in the Second Circuit that, since political subdivisions of the States are not considered to be 'employers' under either the LMRA or the NLRA, the federal courts lack subject matter jurisdiction over hybrid breach of collective bargaining agreement/duty of fair representation claims brought by their employees." *Richardson v. City of Niagara Falls*, No. 09-CV-824, 2012 WL 75771, at *7 (W.D.N.Y. Jan. 10, 2012) (citing *Ford*, 579 F.3d at 188); *see also Cunningham v. Local 30, Int'l Union of Operating Engineers*, 234 F. Supp. 2d 383, 395 (S.D.N.Y. 2002) ("Courts have held that they lack subject matter jurisdiction over hybrid claims by public employees because a public employer is not an 'employer' within the meaning of the LMRA.").

However, even if the Court had subject matter jurisdiction, the claim is time-barred. Because Plaintiff brings a hybrid claim, a six-month statute of limitations applies. *See McLeod v. Verizon New York, Inc.*, 995 F. Supp. 2d 134, 142 (E.D.N.Y. 2014) ("[T]he appropriate statute of limitations for 'hybrid' actions, i.e., cases involving both claims against the employer under Section 301 and claims against the union for breach of the duty of fair representation, is six months." (ultimately citing *DelCostello*, 462 U.S. at 163–71)). "The six-month clock begins to run from 'the time when the union member knew or reasonably should have known that a breach of the duty of fair representation had occurred.'" *McLeod*, 995 F. Supp. 2d at 142 (ultimately quoting *Kavowras v. N.Y. Times Co.*, 328 F.3d 50, 55 (2d Cir. 2003)).

As discussed, the latest date attributable to any allegation in the Second Amended Complaint is April 19, 2017, when Plaintiff's termination became effective. Because Plaintiff did not initiate this action until April 18, 2018, almost one year later, his claim for violation of the CBA is time-barred. *See Rosario v. Local 1106 Transp. Works of Am.*, 29 F. Supp. 3d 153, 161 (E.D.N.Y. 2014) ("[T]his Court dismisses with prejudice [the] [p]laintiff's Hybrid § 301 LMRA claim against both [the employer] and [the union] based on the applicable six-month statute of limitations."); *McLeod*, 995 F. Supp. 2d at 143 ("[S]ince the [plaintiff] commenced this action on March 10, 2013, more than one year after [his claim accrued], his hybrid claim is time-barred and must be dismissed with prejudice."). Therefore, this claim is dismissed.

### 4. Defamation

Plaintiff asserts that Defendants "made false allegations against Plaintiff, defamed his character, [and] harassed Plaintiff" in violation of anti-defamation laws. (SAC ¶ 119.) Specifically, Plaintiff alleges that Dougherty "caused defamation to Plaintiff's character" when he made fun of him "numerous times," including calling him a "hotel waiter based on his facial

features, race, skin color[,] and national origin." (*Id.* ¶ 35.)  He also alleges that Dougherty

"defamed Plaintiff's character" when he made "false allegations" against him in meetings with

Doty and some of his students, although he nowhere explains what the "false allegations" were.

(*Id.* ¶ 32.)  Plaintiff next alleges that Hirsch "defamed Plaintiff's character" in meetings with

students, but does not explain how.  (*Id.* ¶ 37.)  Finally, Plaintiff alleges that Broderick and

Hughes "defamed" his character by "parad[ing]" him through the hallways escorted by a police

officer when he was removed from his classroom.  (*Id.* ¶ 70.)

    A plaintiff must plead four elements to state a defamation claim: "(1) a false and

defamatory statement concerning the plaintiff; (2) publication by the defendant of such a

statement to a third party; (3) fault on the part of the defendant; and (4) injury to the plaintiff."

*Tucker v. Wyckoff Heights Med. Ctr.*, 52 F. Supp. 3d 583, 597 (S.D.N.Y. 2014).  The statute of

limitations in New York for defamation is one year from the date of the publication of the

statement.  N.Y. C.P.L.R. § 215(3).  Construing the allegations in the Second Amended

Complaint liberally, the latest date on which any arguably defamatory statement was published to

a third party was December 22, 2016, when Plaintiff was "paraded" through the hallways of

WPHS, accompanied by a police officer, in front of students and other school staff.  (SAC ¶ 69.)[4]

The Second Amended Complaint includes no subsequent allegations of statements, defamatory

or otherwise, published to any third party.  Because Plaintiff did not initiate this Action until

April 18, 2018, his defamation claims are time-barred.  *See Cinevert v. Varsity Bus Co.*, No. 12-

CV-1223, 2014 WL 4699674, at *4 (E.D.N.Y. Sept. 22, 2014) (dismissing defamation claim as

---

[4] Plaintiff provides no dates for his other defamation allegations.  Furthermore, Plaintiff's allegation that Dougherty insulted him fails to state a defamation claim as there is no allegation the insults were published to a third party, and none of Plaintiff's other allegations explains the purported defamatory statements with sufficient specificity to state a claim.

time barred where, "construing his complaint liberally, the latest alleged . . . action to which [the plaintiff's] defamation claim could conceivably apply was on October 19, 2010," and the plaintiff "did not file his complaint in state court until more than fifteen months later"); *Biomed Pharm., Inc. v. Oxford Health Plans (N.Y.), Inc.*, 775 F. Supp. 2d 730, 738 (S.D.N.Y. 2011) (dismissing defamation claim as time-barred where the plaintiff "identifie[d] only one date . . . on which [the defendant] allegedly made defamatory statements, a date more than one year prior to the commencement of this action" (citation omitted)).

To the extent Plaintiff seeks to establish a defamation claim based on his termination date, which would fall within the statute of limitations, he has not pled a defamatory statement published to a third party relating to his termination with sufficient specificity. "While a complaint for defamation need not be absolutely specific with regard to the statements at issue, it must give a defendant sufficient notice of the communications complained of to enable it to defend itself." *Biomed Pharm.*, 775 F. Supp. 2d at 738 (citation, alterations and quotation marks omitted). "Specifically, a pleading is only sufficient if it adequately identifies the purported communication and provides an indication of who made the communication, when it was made, and to whom it was communicated." *Id.* at 739 (citation and quotation marks omitted). Because Plaintiff failed to specify any defamatory communication made to a third party in connection with his effective termination date, Plaintiff cannot rely on that date to bring his defamation claims within the statute of limitations. *See Reilly v. Natwest Markets Grp. Inc.*, 181 F.3d 253, 271 (2d Cir. 1999) ("While plaintiffs are not required to plead defamation in haec verba*, [the plaintiff's] unsupported claim that [a co-worker] said 'something bad' about him to a client failed to afford [the defendant company] sufficient notice of the communications complained of to enable it to defend itself." (citation, alterations, italics, and some quotation marks omitted));

*Camp Summit of Summitville, Inc. v. Visinski*, No. 06-CV-4994, 2007 WL 1152894, at *12 (S.D.N.Y. Apr. 16, 2007) (dismissing defamation claim where the plaintiff "neither alleges who at [the defendant company] made the defamatory remarks, nor to whom the comments were made"). For these reasons, Plaintiff's defamation claims are dismissed.

### 5. 42 U.S.C. § 1985

"The elements of a claim under § 1985(3) are: (1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of equal protection of the laws, . . . ; (3) an act in furtherance of the conspiracy; (4) whereby a person is . . . deprived of any right of a citizen of the United States." *Brown v. City of Oneonta*, 221 F.3d 329, 341 (2d Cir. 1999) (citation and quotation marks omitted).

Plaintiff's § 1985 claims against the three student Defendants have already been dismissed. (Dkt. No. 18.) Plaintiff asserts one other claim under § 1985, namely that Defendants "intentionally conspired and colluded against Plaintiff and created hostile work environment in the terms, conditions and privileges of employment in violation of 42 U.S.C. § 1985." (SAC ¶ 99.) To satisfy the first element of his claim, Plaintiff must allege "a meeting of the minds, such that . . . [D]efendants entered into an agreement, express or tacit, to achieve the unlawful end." *Williams v. Long Beach Mortg. Co.*, No. 15-CV-5952, 2016 WL 5720810, at *7 (S.D.N.Y. Sept. 30, 2016) (citation and quotation marks omitted), *aff'd*, 709 F. App'x 92 (2d Cir. 2018). The Second Amended Complaint is devoid of allegations that the remaining Defendants conspired with each other to create a hostile work environment. Plaintiff alleges a number of isolated incidents of discriminatory or otherwise hostile conduct, and then conclusorily asserts that such incidents are evidence of a conspiracy. (*See, e.g.*, SAC ¶ 36 (alleging that Dougherty told Plaintiff that Friedman took his laboratory equipment and was also

the person who later informed Plaintiff he was being terminated, "which leads to a reasonable conclusion that Akiva Friedman was part of the conspiracy against Plaintiff and knew beforehand the administration's decision"), ¶ 37 (alleging that Hirsch met with students to discuss Plaintiff, and thereby "conspired" with the students and others to "defame[] Plaintiff's character"), ¶ 38 (alleging that students and administrators "had numerous meetings" where they "reached meeting of the minds and made false allegations" against Plaintiff), ¶ 52 (alleging that two students arrived late to his class and began sending text messages on their cell phones, "which leads to reasonable conclusion of preplanning and conspiracy").) These conclusory allegations of a conspiracy against Plaintiff, largely involving Defendants who have already been dismissed from this Action, are insufficient to state a claim under § 1985. *See Ciambriello v. County of Nassau*, 292 F.3d 307, 325 (2d Cir. 2002) ("[C]omplaints containing only conclusory, vague, or general allegations that the defendants have engaged in a conspiracy to deprive the plaintiff of his constitutional rights are properly dismissed." (citation and quotation marks omitted); *Fernandes v. Moran*, No. 17-CV-03430, 2018 WL 2103206, at *11 (E.D.N.Y. May 7, 2018) (dismissing § 1985(3) claim because the plaintiff's "conclusory allegations of a conspiracy" were insufficient); *Williams*, 2016 WL 5720810, at *7 ("Claims of conspiracy that are vague and provide no basis in fact must be dismissed." (alteration and quotation marks omitted)); *see also Kalderon v. Finkelstein*, 495 F. App'x 103, 108 (2d Cir. 2012) (noting that a plaintiff must plead "some factual basis supporting a meeting of the minds, such that [the] defendants entered into an agreement, express or tacit, to achieve the unlawful end" (citation and quotation marks omitted)). Plaintiff's remaining § 1985 claim is therefore dismissed.

<u>6. 42 U.S.C. § 1983</u>

Section § 1983 provides a mechanism "for redress for the deprivation of rights." *Corley v. City of New York*, No. 14-CV-3202, 2017 WL 4357662, at *5 (S.D.N.Y. Sept. 28, 2017) (quoting *Thomas v. Roach*, 165 F.3d 137, 142 (2d Cir. 1999)); *see also Pagan v. New York State Div. of Parole*, No. 98-CV-5840, 2001 WL 262611, at *8 (S.D.N.Y. Mar. 15, 2001) (holding that the plaintiff's "due process claims . . . can only be brought under [§ 1983]" because the defendant was acting under color of state law). Through § 1983, Plaintiff brings claims under the First and Fourteenth Amendments.

<u>a. Union Defendants</u>

The Union Defendants argue that Plaintiff cannot assert constitutional claims against them because he has failed to plead that they are state actors. The Court agrees.

"Section 1983 provides a cause of action against any person who deprives an individual of federally guaranteed rights 'under color' of state law." *Filarsky v. Delia*, 566 U.S. 377, 383 (2012). Thus, to state a claim pursuant to § 1983, a plaintiff must allege (1) that the challenged conduct was "committed by a person acting under color of state law," and (2) that such conduct "deprived [the plaintiff] of rights, privileges, or immunities secured by the Constitution or laws of the United States." *Cornejo v. Bell*, 592 F.3d 121, 127 (2d Cir. 2010) (quotation marks omitted).

"Labor unions . . . generally are not state actors." *Ciambriello*, 292 F.3d at 323; *see also Dimps v. Dist. Council 37, AFSCME*, No. 01-CV-1735, 2002 WL 206992, at *3 (S.D.N.Y. Feb. 8, 2002) (same). More specifically, courts in the Second Circuit have repeatedly held that teachers' unions are not state actors. *See Guttilla v. City of New York*, No. 14-CV-156, 2015 WL 437405, at *5 (S.D.N.Y. Feb. 3, 2015) (dismissing § 1983 claim against union defendants because "[t]he

complaint does not allege that [the union defendants], as employees of UFT or NYSUT, are state employees," and "labor unions generally are not state actors" (citation, alterations, and quotation marks omitted)); *Boyle v. DeWolf*, No. 13-CV-104, 2013 WL 1751145, at *5 (N.D.N.Y. Feb. 4, 2013) ("To the extent that plaintiff is attempting to name the NYSUT itself, the union is not a state actor, regardless of whether the union represents public employees." (citing *Ciambriello*, 292 F.3d at 324)), *adopted by* 2013 WL 1749933 (N.D.N.Y. Apr. 23, 2013), *appeal dismissed*, No. 13-1945 (2d Cir. July 29, 2013); *Malcolm v. Honeoye Falls-Lima Educ. Ass'n*, 678 F. Supp. 2d 100, 107 (W.D.N.Y. 2010) (dismissing § 1983 claims against NYSUT and a local affiliate because they were not state actors); *see also Jacobs v. Mostow*, 271 F. App'x 85, 88 (2d Cir. 2008) (affirming dismissal of § 1983 claims against NYSUT because the "complaint fails to identify any state actor").

Although Plaintiff makes several allegations that Defendants conspired with each other, the Court has already held that those allegations are too conclusory to establish a conspiracy. *See Ciambriello*, 292 F.3d at 324 ("A merely conclusory allegation that a private entity acted in concert with a state actor does not suffice to state a § 1983 claim against the private entity."); *Guttilla*, 2015 WL 437405, at *6 (dismissing § 1983 claim against union defendants where "the complaint makes only conclusory allegations that these defendants conspired with a state actor"); *Dimps*, 2002 WL 206992, at *3 (dismissing § 1983 claim against union defendant because the plaintiff failed to "allege that [the union] defendant conspired with a state official"); *McGovern v. Local 456, Int'l Bhd. of Teamsters, Chauffeurs & Warehousemen & Helpers of Am.*, 107 F. Supp. 2d 311, 317 (S.D.N.Y. 2000) (granting summary judgment on § 1983 claim against a labor union where the complaint "fail[ed] to allege the existence of a conspiracy between the County and

defendant Union").  Therefore, Plaintiff's constitutional claims brought against the Union

Defendants pursuant to 42 U.S.C. § 1983 are dismissed.

### b.  White Plains Defendants

With respect to the White Plains Defendants, Plaintiff alleges that his employment was

terminated "without a hearing in violation of [the] Due Process Clause of the Fourteenth

Amendment of the U.S. Constitution."  (SAC ¶ 111.)  He also alleges that WPCSD's bar on

contacting any WPCSD administrator or employee, other than those working at the Central

Office, violates his rights under the First Amendment.  (*Id.* ¶ 113.)

### i.  Fourteenth Amendment

"In New York, a tenured public school teacher is entitled to a hearing prior to

termination."  *Gipson v. Hempstead Union Free Sch. Dist.*, No. 09-CV-5466, 2010 WL 4942650,

at *4 (E.D.N.Y. Nov. 18, 2010); *see also Vassilev v. City of New York*, No. 13-CV-5385, 2014 WL

3928783, at *3 (S.D.N.Y. Aug. 12, 2014) ("If [the [p]laintiff was in fact a tenured employee, he

was entitled to a pre-termination hearing and other process prior to termination.").  However,

"[i]t is well settled under New York law that the services of a probationary teacher may be

discontinued at any time during the probationary period," and probationary teachers therefore

"ha[ve] no property interest in [their] employment."  *Federico v. Bd. of Educ. of Pub. Sch. of*

*Tarrytowns*, 955 F. Supp. 194, 199 n.1 (S.D.N.Y. 1997); *Segal v. City of New York*, 368 F. Supp.

2d 360, 362 n.1 (S.D.N.Y. 2005) (noting that the plaintiff "ha[d] no due process claim based on

any property interest, since she was a probationary employee with no constitutionally protected

property interest in her employment"), *aff'd*, 459 F.3d 207 (2d Cir. 2006).

Plaintiff alleges that he was hired "as a leave replacement chemistry teacher against a

permanent vacancy opened due to the death of one of WPCSD's chemistry teachers."  (SAC

¶ 23.)  He then alleges that after the decision was made to terminate his employment, but before the termination became effective, the WPCSD Superintendent "recommended to the Board to retroactively convert Plaintiff's leave-replacement appointment to a probationary appointment and the Board approved it . . . ."  (*Id.* ¶ 78.)  The White Plains Defendants argue that "Plaintiff does not contend, nor can he, that as a leave replacement teacher he was granted tenure," and therefore he had no property interest in continued employment.  (White Plains Defs.' Mem. 17 n.9.)

"Due process does not, in all cases, require a hearing before the state interferes with a protected interest, so long as 'some form of hearing is [provided] before an individual is finally deprived of [the] property interest.'"  *Broomer v. Huntington Union Free Sch. Dist.*, No. 12-CV-574, 2013 WL 4094924, at *4 (E.D.N.Y. Aug. 13, 2013) (quoting *Nnebe v. Daus*, 644 F.3d 147, 158 (2d Cir. 2011)), *aff'd*, 566 F. App'x 91 (2d Cir. 2014).  Nevertheless,  "[t]he Supreme Court instructs that if a property interest is extinguished pursuant to 'established state procedure' that requires a pre-deprivation constitutional safeguard, that a post-deprivation remedy such as a state Article 78 proceeding does not satisfy due process."  *Storman v. Klein*, No. 09-CV-338, 2009 WL 1035964, at *18 (S.D.N.Y. Apr. 20, 2009) (ultimately quoting *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 435–36 (1983)); *see also Romano v. Harrington*, 664 F. Supp. 675, 682 (E.D.N.Y. 1987) ("If [the] plaintiff's . . . job is probationary, [the] plaintiff's post-deprivation hearing was adequate.  However, if [the] plaintiff's job . . . constitutes a property interest protected by the due process clause, plaintiff may have been entitled to a pre-termination proceeding, including the right to retain counsel, prior to his discharge." (citing *Goetz v. Windsor Cent. Sch. Dist.*, 698 F.2d 606, 609 (2d Cir. 1983), and *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 570–71 n.8 (1972))).

Here, the Court cannot definitively determine from Plaintiff's allegations whether he had a property interest in his employment such that he was entitled to a pre-termination hearing. However, Plaintiff's allegation that his status was retroactively changed before he was terminated suggests that as a leave replacement teacher, he would have been entitled to different protections than as a probationary teacher. Although the White Plains Defendants assert that neither status entitles Plaintiff to a pre-deprivation hearing, (White Plains Defs.' Mem. 17 n.10), "any analysis regarding whether and when [D]efendants owed [Plaintiff] a hearing prior to depriving him of his alleged property interest . . . turns on facts not before this Court on this [M]otion." *Storman*, 2009 WL 1035964, at *18. Because the Court cannot determine from the pleadings that Plaintiff was not entitled to a pre-deprivation hearing as a matter of law, and in light of Plaintiff's pro se status, White Plains Defendants' Motion To Dismiss Plaintiff's Procedural Due Process claim is denied.[5]

### ii. First Amendment

Plaintiff asserts that "WPSCD's continued ban . . . barring Plaintiff from contacting any WPCSD[] administrator or employee other than the individuals working at the Education House (Central Office) is a violation of Plaintiff's rights guaranteed in the First Amendment to the U.S. Constitution." (SAC ¶ 113.) Plaintiff also asserts that because WPTA's office is on WPCSD property and he was barred from entering that property, he was effectively barred from going to

---

[5] Although Plaintiff's Procedural Due Process claim survives, if Defendants ultimately prove that Plaintiff's termination was justified, i.e., that they would have made the same determination even if Plaintiff had received a pre-deprivation hearing, Plaintiff may be entitled only to nominal damages. *See Carey v. Piphus*, 435 U.S. 247, 267 (1978) (explaining that if a court determines that an adverse action that violated procedural was "justified," the plaintiff is "entitled to recover nominal damages not to exceed one dollar"); *Rentas v. Ruffin*, 816 F.3d 214, 223 (2d Cir. 2016) ("When a defendant has deprived the plaintiff of liberty, but the adverse action would have been taken even in the absence of the wrongful conduct, the plaintiff is entitled only to nominal damages." (citation, alterations, and quotation marks omitted)).

the WPTA office.  (*Id.* ¶ 86.)[6]  The Court construes Plaintiff as asserting a violation of his right to freedom of association, an unlawful prior restraint on speech, and an unconstitutional ban from public property.

"[A] public employee bringing a First Amendment freedom of association claim must persuade a court that the associational conduct at issue touches on a matter of public concern." *Cobb v. Pozzi*, 363 F.3d 89, 102–03 (2d Cir. 2004) (citations omitted); *see also Rutherford v. Katonah-Lewisboro Sch. Dist.*, 670 F. Supp. 2d 230, 246 (S.D.N.Y. 2009) (holding that "in order to state a viable First Amendment free association claim, Plaintiff must allege that the associational activity at issue touches upon a matter of public concern").  The same is true for claims based on prior restraints of speech.  *See Rutherford*, 670 F. Supp. 2d at 244 ("It is well-established that a public employee who brings a First Amendment claim alleging a prior restraint on her freedom of speech must show that the speech touches on a matter of public concern." (citing *United States v. Nat'l Treasury Employees Union (NTEU)*, 513 U.S. 454, 465–66 (1995)).  Here, Plaintiff has included no allegations about what specific communications were precluded by his inability to communicate with employees of the school district other than the Central Office.  Indeed, Plaintiff alleges that he was *not* banned from communicating with the school district's Central Office or with union representatives, thereby permitting him to continue to discuss his termination and any grievances he might have with administrators and WPTA. Because Plaintiff does not allege anything about the barred communication, other than the fact that it prevented him from speaking with WPCSD employees through anything other than the Central Office, Plaintiff's freedom of speech claim fails.  *See Spring v. County of Monroe*, 103 F.

---

[6] The Second Amended Complaint indicates that Plaintiff was not barred from communicating with his union representatives.  (SAC ¶ 74.)

Supp. 3d 361, 365 (W.D.N.Y. 2015) (granting motion to dismiss First Amendment claim because the plaintiff "failed to plausibly allege that it related to a matter of public concern"); *Dorcely v. Wyandanch Union Free Sch. Dist.*, 665 F. Supp. 2d 178, 204 (E.D.N.Y. 2009) (dismissing First Amendment claim where the plaintiff was barred from speaking to school district employees during administrative leave because "there is no evidence that [the plaintiff] wished to speak to his colleagues, his counsel or a union representative on a matter of public concern"); *see also Wetzel v. Town of Orangetown*, 308 F. App'x 474, 477 (2d Cir. 2009) (holding the plaintiff failed to state a claim where she was "prohibited from addressing . . . [t]own officials on the matter of the disciplinary proceedings against her," because "those proceedings are a matter of personal interest, not a matter of public concern").

"[T]o the extent that Plaintiff is claiming a violation of his right to freedom of association," based on Defendants preventing him from socializing with former co-workers, "his claim is barred[,] as there is no generalized right of 'social association.'" *Dorcely*, 665 F. Supp. 2d at 204 (citing *City of Dallas v. Stanglin*, 490 U.S. 19, 23 (1989)); *see also Gallagher v. Bd. of Educ. of E. Hampton Union Free Sch. Dist.*, No. 16-CV-473, 2017 WL 8813134, at *7 (E.D.N.Y. Dec. 21, 2017) ("[T]he Constitution does not recognize a generalized right of social association, and courts in the Second Circuit have not accepted intimate association claims based on friendships, however close." (citation and quotation marks omitted)), *adopted by* 2018 WL 798882 (E.D.N.Y. Feb. 9, 2018).

To the extent Plaintiff's First Amendment claim is predicated on being banned from WPCSD property, it still fails. "Schools possess the right to exercise ultimate authority for access to students, school buildings and school property." *Gallagher*, 2017 WL 8813134, at *7; *see also Jones v. Bay Shore Union Free Sch. Dist.*, 170 F. Supp. 3d 420, 433 (E.D.N.Y. 2016)

(same), *aff'd*, 666 F. App'x 92 (2d Cir. 2016). Plaintiff "has not cited, nor has the court found, any case law supporting the proposition that the First Amendment guarantees access to school grounds." *Kadri v. Groton Bd. of Educ.*, No. 13-CV-1165, 2014 WL 1612492, at *5 (D. Conn. Apr. 22, 2014); *see also Roth v. Farmingdale Pub. Sch. Dist.*, No. 14-CV-6668, 2016 WL 767986, at *10 (E.D.N.Y. Feb. 26, 2016) ("[U]nder New York law, a plaintiff does not have a constitutionally protected liberty interest in accessing school property."). Plaintiff makes no "specific allegations relating to unconstitutional time, place, and manner restrictions," such as restrictions based on his beliefs or viewpoints, and does not allege that his ban from school property impacts his "ability to speak, assemble, or associate in alternative fora." *Gallagher*, 2017 WL 8813134, at *7. Plaintiff therefore fails to state a First Amendment claim based on being barred from entering WCPSD property. *See id.* (granting motion to dismiss First Amendment claim based on "no trespass" order barring the plaintiff from entering school property during suspension because it "is content-neutral as it targets employees based on their current employment status, and not their beliefs or views"); *Kadri*, 2014 WL 1612492, at *5 (dismissing First Amendment claim where the plaintiff "fails to plausibly allege that his ban from school property was not reasonable or viewpoint neutral"); *Nowacki v. Town of New Canaan*, No. 12-CV-1296, 2013 WL 785355, at *5–6 (D. Conn. Mar. 1, 2013) (noting that "[a] school is generally considered a non-public forum" and dismissing First Amendment claim based on restriction of access to school property because, inter alia, "there is no indication or allegation that any restriction on his ability to speak to school officials on school property was intended to restrict the *content* of his speech rather than to preserve order and tranquility on school property"). Plaintiff's First Amendment claim is therefore dismissed.

## III. Conclusion

For the foregoing reasons, the Union Defendants' Motion is granted, and the White Plains Defendants' Motion is granted in part and denied in part. All of Plaintiff's claims except for his procedural due process claim based on his termination without a prior hearing are dismissed. However, because this is the first adjudication of Plaintiff's claims on the merits, the dismissal is without prejudice. *See Terry v. Inc. Vill. of Patchogue*, 826 F.3d 631, 633 (2d Cir. 2016) (explaining that "district judges should, as a general matter, liberally permit pro se litigants to amend their pleadings" unless "amendment would be futile"). Should Plaintiff choose to file a third amended complaint, he must do so within 30 days of this Opinion, addressing the deficiencies identified herein. The third amended complaint will replace, not supplement, the Second Amended Complaint currently before the Court. It therefore must contain *all* of the claims and factual allegations Plaintiff wishes the Court to consider. The Court will not consider factual allegations raised in supplemental declarations, affidavits, or letters. If Plaintiff fails to abide by the 30-day deadline, this action will proceed solely on Plaintiff's procedural due process claim.

The Clerk of Court is respectfully requested to terminate the pending Motions, (*see* Dkt. Nos. 42, 43), and mail a copy of this Opinion to Plaintiff.

SO ORDERED.

Dated: July **15**, 2019
White Plains, New York

KENNETH M. KARAS
United States District Judge

44